UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DANIEL VASQUEZ,

    Defendant.

_____/

Case. No.  18-cr-20284

HON. PAUL D. BORMAN

**GOVERNMENT'S RESPONSE OPPOSING
DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Now comes the United States of America, by and through its undersigned attorneys, and submits its response in opposition to Defendant's Motion for Compassionate Release (ECF No. 49, 52). Defendant Daniel Vasquez filed a request for release based on his medical condition and the novel coronavirus pandemic (COVID-19). He began serving his current sentence at Hazelton Federal Correction Complex on July 7, 2019. After serving only 16 months of his 49 month term of imprisonment, he is requesting compassionate release under 18 U.S.C. § 3582(c)(1)(A). While the government understands his concern regarding the COVID-19 pandemic, he does not satisfy the requirements for compassionate release. Despite his compelling and extraordinary circumstances, the Court should

1

deny defendant's motion because the 3535(a) factors weigh strongly against a reduction in his sentence.

## BACKGROUND

From November 2012 to November 2017, Defendant Daniel Vasquez consistently received monthly prescriptions for 1,500 Oxycodone pills, to be taken in conjunction with Hydrocodone pills. If taken as prescribed, the Defendant's daily dose of medication would equate to over 10 times the Center for Disease Control's recommended daily dosage of opioid medication. Given this, investigators knew that there was no way that the Defendant was possibly taking all of his medication; which was confirmed when, on July 27, 2017, agents observed him selling Oxycodone pills in a movie theater parking lot.

On November 13, 2017, less than 30 days after filling a prescription for 1,500 Oxycodone pills, Vasquez was administered a blood test to ascertain the level of opioids in his system. He tested negative for all opioids and showed no signs of opiate withdrawal. If he had in fact been taking his Oxycodone, the presence of the drug would have been in his system. Vasquez ultimately admitted that he was in fact not taking his prescription but instead selling the drugs on the illegal street market.

On December 7, 2018, Vasquez pleaded guilty to a charge of possession with the intent to distribute controlled substances (ECF. No. 35); and on April 2, 2019,

this Court sentenced him to a 49 month term of imprisonment followed by a three year term of supervised release (ECF No. 40). He began serving his custodial sentence at Hazelton FCC on July 7, 2019. His projected release date is December 28, 2022. Vasquez (age 63) suffers from hypertension, type 2 diabetes mellitus, obstructive sleep apnea, and obesity. In April 2020, he filed a request for a Reduction in Sentence/Compassionate Release with the warden based on his medical condition; which was later denied on April 19, 2020. He filed an additional request on April 27, 2020 which was denied on April 28, 2020, appealed and then again was denied by the regional director on July 6, 2020. He then filed the instant motion with this Court on July 23, 2020. ECF No. 49. The Court appointed counsel for the Federal Defender Office, who supplemented his filing on November 23, 2020. ECF No. 52.

## **LEGAL STANDARD**

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory

exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

*First*, compassionate release requires exhaustion. If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at the facility received the request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). And as the Sixth Circuit recently held, this statutory exhaustion requirement is mandatory. *Alam*, 960 F.3d at 832–36.

*Second*, even if a defendant exhausts, he must show "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A). The defendant's "generalized fears of contracting COVID-19, without more," do not satisfy this requirement. *United States v. Jackson*, 2020 U.S. App. LEXIS 32269, at *6 (6th Cir. Oct. 13, 2020); *accord United States v. Bothra*, No. 20-1364, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020).

*Third*, even if a defendant is eligible for compassionate release, a district court may not grant the motion unless the factors in 18 U.S.C. § 3553(a) support release. 18 U.S.C. § 3582(c)(1)(A); *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020). As at sentencing, those factors require the district court to consider the defendant's history and characteristics, the seriousness of the offense, the need to

promote respect for the law and provide just punishment for the offense, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a).

## ARGUMENT

The Court should deny Vasquez's motion. "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Although Vasquez's heightened risk from COVID-19 based on his current medical condition qualifies as an "extraordinary and compelling reason[]", he is still a danger to the community and the 3553(a) factors do not warrant a reduction in his sentence.

### I. The Bureau of Prisons has responded to COVID-19 by mitigating the risks from COVID-19 within its facilities.

The Bureau of Prisons has reacted quickly to prevent and combat the spread of COVID-19 within its facilities. *Wilson v. Williams*, 961 F.3d 829, 833–34 (6th Cir. 2020). Since January 2020, the Bureau of Prisons has implemented "a phased approach nationwide," implementing an increasingly strict protocol to minimize the virus's spread. *Id*. The Bureau of Prisons has assessed its entire population to determine which inmates face the most risk from COVID-19, pose the least danger to public safety, and can safely be granted home confinement.

On March 13, 2020, the Bureau of Prisons began modifying its operations to implement its COVID-19 Action Plan and minimize the risk of COVID-19

transmission into and inside its facilities. *Id.*; *see* BOP Covid-19 Modified Operations Website.[1] Since then, as the worldwide crisis has evolved, the Bureau of Prisons has repeatedly revised its plan. *Wilson*, 961 F.3d at 834. To stop the spread of the disease, the Bureau of Prisons has restricted inmate movement within and between facilities. *Id.* When new inmates arrive, asymptomatic inmates are placed in quarantine for a minimum of 14 days. *Id.* Symptomatic inmates are provided with medical evaluation and treatment and are isolated from other inmates until testing negative for COVID-19 or being cleared by medical staff under the CDC's criteria. *Id.*

Within its facilities, the Bureau of Prisons has "modified operations to maximize physical distancing, including staggering meal and recreation times, instating grab-and-go meals, and establishing quarantine and isolation procedures." *Id.* Staff and inmates are issued face masks to wear in public areas. *See* BOP FAQs: Correcting Myths and Misinformation.[2] When visitation is permitted at an institution, the visits are non-contact, require masks, and social distancing between inmates and visitors is enforced, either via the use of plexiglass (or similar barriers), or physical distancing (i.e., six feet apart). Visitors are screened for Covid-19 symptoms and their temperature is checked. Visitors who are sick or symptomatic

---

[1] https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed December 1, 2020)
[2] https://www.bop.gov/coronavirus/docs/correcting_myths_and_misinformation_bop_covid19.pdf (last accessed December 1, 2020)

are not allowed to visit, and inmates in quarantine or isolation cannot participate in social visiting. *See* BOP Modified Operations. But to ensure that relationships and communication are maintained throughout this disruption, the Bureau of Prisons has increased inmates' telephone allowance to 500 minutes per month, and legal visits are accommodated upon request. *See* BOP Modified Operations.

Like all other institutions, penal and otherwise, the Bureau of Prisons has not been able to eliminate the risks from COVID-19 completely, despite its best efforts. But the Bureau of Prisons' measures will help federal inmates remain protected from COVID-19 and ensure that they receive any required medical care during these difficult times.

## II. Daniel Vasquez fails to meet the requirements for compassionate release.

Despite having exhausted his administrative remedies, Vasquez's motion for a reduced sentence should be denied because he fails to meet the additional requirements of compassionate release. The COVID-19 pandemic does not, by itself, qualify as the type of inmate-specific condition permitting compassionate release. However, the government agrees that some of Vasquez's medical conditions qualify as extraordinary and compelling. In addition to other ailments, Vasquez's medical records confirm that he suffers from obesity and type 2 diabetes mellitus, which the CDC has confirmed are risk factors that place a person at

increased risk of severe illness from COVID-19. *See* CDC Risk Factors.[3] Given the heightened risk that COVID-19 poses to someone with those medical conditions, Vasquez has satisfied the initial eligibility criteria for compassionate release under § 3582(c)(1)(A).

However, before ordering relief, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that release is appropriate. 18 U.S.C. § 3582(c)(1)(A). A defendant's failure to establish that the § 3553(a) factors support relief is an independent basis for denying compassionate release. *See United States v. Knight*, No. 15-20283, 2020 WL 3055987, at *3 (E.D. Mich. June 9, 2020), *United States v. Ruffin*, 978 F.3d 1000, 1008–09 (6th Cir. 2020); *accord United States v. Austin*, 825 F. App'x 324, 325–27 (6th Cir. 2020) (upholding a district court's denial of compassionate release based on the § 3553(a) factors); *United States v. Kincaid*, 802 F. App'x 187, 188–89 (6th Cir. 2020) (same). So even if the Court were to find that Vasquez established extraordinary and compelling reasons for his release, the § 3553(a) factors should still disqualify him.

For starters, Vasquez's long remaining sentence weighs heavily against release. This Sixth Circuit has repeatedly upheld the denial of compassionate release under § 3553(a) when a defendant has a long remaining sentence, including in a

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed December 1, 2020).

recent published decision. *Ruffin*, 978 F.3d at 1008; *accord Kincaid*, 802 F. App'x at 188–89; *Austin*, 825 F. App'x at 326. This district court has also previously held, allowing a ***pill dealer*** to be released "***after only serving about a third of his sentence*** would not promote respect for the law or proper deterrence, provide just punishment, and avoid unwarranted sentencing disparities." *See Knight*, 2020 WL 3055987, at *3 (emphasis added) (Judge Steeh).

Nearly identical to the facts and circumstances in *Knight*, Vasquez has only served one third of his sentence. Like *Knight*, Vasquez was a pill dealer involved in a very serious and voluminous opioid distributions scheme. Vasquez trafficked more than 30,000 Oxycodone pills. It is clear that had he not been caught, he would not have changed his course of conduct in any way. Releasing him now would likely lead to the same conduct as he has only served a little over one year of his four year sentence.

Moreover, placing Vasquez back into the community at this time, would serve no objectives of the § 3553(a) factors; which is especially important in the midst of an ongoing opioid epidemic. The danger that Vasquez poses to the community as an opioid pill dealer is substantial. Unfortunately COVID-19 pandemic has not had any effect on decreasing the number of opioid pills that are hitting the streets. Pill dealers, like Vasquez, still have access to medical professionals that will write medically unnecessary prescriptions in exchange for cash payments. There are still

9

real risks to public health and safety right now, and those risks will only increase if Vasquez is released into the community with access to deadly opioids to place on the streets.

There is no doubt that Vasquez's conduct had a significant and devastating impact on our community. It was an extremely serious offense that inevitably contributed to the addiction and demise of others. The 49 month sentence was imposed to reflect the severity of his actions and show him and others that as you engage in this type of criminal conduct, penalties will be severe. If he were to be released after serving just one third of his sentence, this goal of sentencing would be completely lost. Additionally an early release, would result in a severe sentencing disparity among other similarly situated opioid pill distributors; and would be unlikely to deter either Vasquez or other individuals from engaging in similarly dangerous conduct in the future.

Consequently, the § 3553(a) factors weight heavily against any reduction in sentence at this time.

### III. If the Court were to grant Vasquez's motion, it should order a 14-day quarantine before release.

If the Court were inclined to grant Vasquez's motion despite the government's arguments above, the Court should order that he be subjected to a 14-day quarantine at his facility, prior to his release.

## **CONCLUSION**

For the reasons set forth herein, the government respectfully request that the Court deny Daniel Vasquez's Motion for Compassionate Release.

Dated: December 3, 2020

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

/s/ Brandy R. McMillion
Brandy R. McMillion (P69838)
Assistant United States Attorney
211 Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9622
Brandy.McMillion@usdoj.gov

## Certificate of Service

I hereby certify that on December 3, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Rhonda Brazile
Federal Defender Office
613 Abbott St., Suite 500
Detroit, MI 48226
(313) 967-5542
*Attorney for Defendant*